So Ordered.

Signed this 31 day of October, 2017.

_____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | ) |
| LaFlamme's Inc. | ) Chapter 11 |
| | ) Case No: 17-11739-1 rel |
| 30−0126185 | ) |
| 9140 State Route 22 | ) |
| Granville, NY 12832 | ) |
| Debtor | ) |
| | ) |

**ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL ON TEMPORARY BASIS.**

This matter came before this Court on the motion (the "Motion") of Debtors, People's United Bank, N.A. (Peoples) and Heritage Federal Family Credit Union requesting that this Court enter an order authorizing Debtor to: (a) use certain Cash Collateral on an emergency basis for the next thirty days and not after.  This Order and Findings of Fact are also properly referred to as the "Interim Cash Collateral Order".

Unless otherwise indicated, all capitalized terms have the meanings stated in Exhibit A attached and incorporated hereto.

This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable as of the Filing Date.

**WHEREAS:**

A. On the Filing Date, Debtor filed a voluntary petition for relief under chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as debtor in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. No Committee has been appointed in this Case.

D. Peoples holds three loans with the Debtor, including a Line of Credit which is secured by inventory and other assets of the Debtor. The other two loans are cross-collateralized, although such have as primary collateral pieces of real estate.

E. Heritage Family Federal Credit Union (Heritage) has a Line of Credit secured by the inventory and other assets of the Debtor. Heritage joins in this Motion.

F. The Peoples Loans and the Heritage Line of Credit each constitute legal, valid and binding obligations of Debtor, enforceable in accordance with their terms;

   As of the Date of Filing, each of the following loans were secured claims in the stated amounts, exclusive of accrued and accruing Allowable 506(b) amounts:

   i. Peoples Loans: $1,038,954.39, which includes the Line of Credit and also two other loans (totaling $752,084.95 for principal and interest at time of filing) which are secured by real property but have a cross-collateralization on the line of credit.

   ii. The Heritage Line of Credit and the Heritage Truck Loan: $240,734.08.

G. No challenges, offsets, defenses or counterclaims to the Peoples Loans or the Heritage Line of Credit or Heritage Truck Loan exist, and no portion of those debts is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise; upon the entry of this Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012.

H. As of the Filing Date, the value of Heritage and Peoples interest in the Prepetition Collateral was not less than $1,000,000.00; provided, however, that nothing herein shall prejudice Heritage or Peoples' right to later: (1) assert that their respective interests in the Prepetition

    Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

I. Heritage and Peoples are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

J. Heritage and Peoples do not know the extent of decrease in inventory or cash collateral since the Petition Date.

K. Prior to the entry of this Order, the Debtor is precluded from using any Cash Collateral, unless express written authorization is provided by the lenders Peoples and Heritage, by the paragraph set out on page 3 of this Court's Order of September 20, 2017 (the "Order on Debtor in Possession").

L. Neither Peoples nor Heritage have given any such authorization, much less in writing.

M. Under the circumstances of this Case, and the need for a Cash Collateral Order in order for the Debtor to continue in business, the entry of this Order is in the best interest of Debtor's estate and its creditors.

N. The notice provided by Peoples of the Motion, the Motion for Reduced Time, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

**IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1. Authorization to Use Cash Collateral. Beginning as of the date of this Order and not before, Debtor is authorized and ordered to use Cash Collateral solely in accordance with the terms and provisions of this Order, and particularly (without limiting the other provisions here) according to the attached Budget subject to the Permitted Variance.

2. Unless a Final Order or subsequent interim order is entered on use of Cash Collateral, the Debtor shall cease to use Cash Collateral at the end of November 6, 2017, and shall not thereafter dispossess any item of value or use any Cash Collateral. All money remaining in the DIP Accounts as of November 7, 2017 shall be held in that account pending further Order of this Court.

3. Collection and use of Cash Collateral.

    a. Delivery of Cash Collateral into DIP Accounts.

        i. Debtor shall deposit all Cash Collateral now or hereafter in their possession or control into the DIP Accounts promptly upon receipt thereof. Cash Collateral shall be placed into the appropriate DIP Account, with money to be paid as taxes paid into the tax account and the remainder placed in the operating account.

        ii. Debtor shall cause all depository banks (the "Other Banks") at which Debtor maintains a deposit account to remit the available balance, less minimum required balance, in such accounts to the DIP Accounts on a daily basis, subject to any valid and enforceable rights of setoff or other secured claims in favor of the Other Banks as of the Filing Date. All of Debtor's Accounts other than the DIP Accounts shall be closed immediately, and no accounts opened other than the DIP Accounts.

        iii. Debtor shall cause all funds, held by any other person or entity, which are Cash Collateral, to be deposited into the DIP Accounts on a daily basis, and shall not have any person or entity, other than the DIP Accounts holder, to hold cash collateral thereafter.

    b. Application of Cash Collateral. Debtor is authorized to use Cash Collateral to fund Budget expenses according to the terms and conditions of this Order. The Debtor is hereby authorized and Ordered to spend Cash Collateral, out of the DIP Accounts and not otherwise, as follows:

        i. In the amounts and to the entities as set out in the Budget (Subject to the Permitted Variance), within no more than one week of the dates listed on the Budget;

        ii. Payment for taxes shall be made out of the tax account;

        iii. If there is not sufficient Cash Collateral plus Excess Cash Collateral to meet expenses, then expenses shall be paid in the priority listed on the budget (lower numbers paid before higher numbers); and

        iv. If actual expenses are less than expenses listed in the Budget, the excess shall be held in the DIP Accounts and added the Excess Cash Collateral.

4. Excess Cash Collateral may only be used to pay expenses set out on the Budget if Cash Collateral Receipts are less than as listed on the Budget.

5. Prohibition Against Use of Cash Collateral. Except as provided for in this Order, Debtor will not use or seek an Order to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363, Peoples and Heritage have consented to such order or use.

6. Prohibition Against Additional Debt. Debtor will not incur or seek to incur debt secured by a lien which is equal to or superior to the Liens held by Heritage or Peoples, unless, in addition to the satisfaction of all requirements of Code § 364, Heritage and Peoples have consented to such order.

7. Debtor shall provide Peoples and Heritage with weekly inventory which details actual inventory for sale at the debtor's sales floors, listing wholesale value; amount being sought for the item ( i.e retail value), any other lien interest exerted against any inventory, and listing the date of such inventory, and weekly reports of sales, from the Petition Date..

8. Regarding the debtor's post-petition Vermont State tax liability, the debtor is directed to deposit to the tax account and hold separate and apart from all other funds, other than federal or other state tax deposits, all monies deducted and withheld from employees or collected from others for taxes pursuant to Vermont Tax Law, including but not limited to, sales and use taxes.

9. All State income, sales and use taxes which debtor is required to withhold or collect shall be remitted by the debtor to the tax accounts within the statutory periods set forth in the applicable statutes. All withholding tax returns and all sales and use tax returns should be submitted in a timely manner to the Vermont Department of Taxes.

10. All tax deposits (federal, state, or political subdivisions thereof) are to be used and disbursed only for the particular purpose for which the debtor has been directed to set them aside.

11. Adequate Protection of Interests. Peoples' and Heritage are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

12. Priority of Prepetition Liens. The liens securing and underlying the Peoples LOC Debt and the Heritage Debt shall constitute prior Secured Liens on all inventory, business equipment, and other articles as indicated in the Peoples Line of Credit or the Heritage Line of Credit, subject only to the liens as specified in Exhibit C.

13. No portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law.

14. Allowed Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Heritage or Peoples in the Aggregate Collateral granted pursuant to this Order proves insufficient, Heritage and/or Peoples shall have an allowed claim under Code § 507(b), in the amount of any such insufficiency, with priority over the claims of any other party in interest under Code § 507(b).

15. No consent by Heritage or Peoples to any administrative claim, including fees and expenses of professionals, sought to be assessed against or attributed to Lender or its respective interests in the Pre-Petition Collateral or the Post-Petition Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtor, shall be implied from any action, inaction, or acquiescence by Peoples or Heritage or otherwise.  Except as set forth herein, Peoples and Heritage have consented to or agreed to the use of the proceeds of the Aggregate Collateral other than as provided for in the Budget or the Carve-out.  Neither the surcharge provisions of Section 506(c) of the Bankruptcy Code, nor the enhancement of collateral provisions of Section 552 of the Bankruptcy Code, shall be imposed upon Lender, or upon any of the Aggregate Collateral or Cash Collateral, or upon the proceeds thereof.

16. As consideration for Heritage and Peoples consenting to the Debtor's use of Cash Collateral and the Carve Out, Debtor will require in a Final Order that no expenses of administration of the Debtor's Chapter 11 case or any future proceeding which may result from such case, including liquidation in this Chapter 11 case or other proceedings under the Bankruptcy Code, shall be charged against Aggregate Collateral or Cash Collateral pursuant to § 506(c) of the Bankruptcy Code, other than the Carve Out, defined below, as applicable, without the prior written consent of Heritage and Peoples and no such consent shall ever be implied from any other action, inaction or acquiescence by Heritage or Peoples.

17. Reservation of Rights; Bar of Challenges and Claims. Subject to entry to a subsequent interim order in respect of the Motion or Final Order, the stipulations and representations contained in this Order shall be binding on all Challenge Parties, unless and solely to the extent that (i) Debtor receives notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

6

a. Challenge Procedure. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify Debtor during the Investigation Period of its demand that Debtor initiate an action or adversary proceeding relating thereto and from the date that Debtor is so notified, Debtor shall have five (5) days to notify the Challenge Party of whether Debtor intends to initiate such action and ten (10) days to initiate such action. If Debtor notifies such Challenge Party that Debtor does not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court.

b. Bar of Challenges and Claims. If Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Heritage or Peoples solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, the Prepetition Claims and liens of Heritage and Peoples shall be deemed to be allowed for all purposes in these Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise.

c. Limitation on Use of Postpetition Debt, Cash Collateral and Postpetition Collateral. Notwithstanding anything herein or in any other order by this Court to the contrary, no Postpetition Debt, Cash Collateral, or Postpetition Collateral, or proceeds of any of those, may be used to pay any expenses in connection with:

   i. a Challenge preventing, hindering or otherwise delaying Heritage or Peoples' assertion, enforcement or realization on the Aggregate Collateral once an Event of Default has occurred and is continuing in accordance with the Prepetition Documents or this Order; provided, however, that Debtor and the Committee may contest in good faith whether an Event of Default has occurred;

7

    ii. seeking to modify the rights granted to Heritage or Peoples hereunder or under the Prepetition Documents, without such parties' prior written consent,

    iii. paying any amount on account of any claims arising prior to the Filing Date unless such payments are (1) approved by an order of this Court and (2) in accordance with the Postpetition Credit Agreement and the Budget,

    iv. using or seeking to use Cash Collateral except to the extent permitted under the Postpetition Documents and not otherwise prohibited hereunder, (v) selling or otherwise disposing of the Postpetition Collateral except as permitted by the Postpetition Documents or otherwise with the consent of the Postpetition Agent or the Postpetition Lenders, or

    v. using or seeking to use any insurance proceeds related to Aggregate Collateral, except as permitted by the Prepetition Documents or otherwise with the consent of Heritage or Peoples.

18. **No Abandonment to Heritage or Peoples.** Debtor may not seek to abandon any Aggregate Collateral into the possession or control of Heritage or Peoples without the prior written consent of Heritage and Peoples. Nothing in this Section will be deemed to limit or prejudice Debtor's right to abandon pursuant to Code § 554.

19. **Modification of Stay.** The automatic stay of Code § 362 is hereby modified with respect to Heritage and Peoples to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Heritage and Peoples and their agents to exercise their respective rights contemplated by this Order.

20. **No Waiver.** Neither Heritage nor Peoples shall be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Heritage or Peoples, as applicable, and directed to Debtor. No failure of Heritage or Peoples to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Heritage or Peoples thereafter to demand strict compliance and performance therewith, and no delay on the part of Heritage or Peoples in the exercise of any right or remedy under this Order, the Prepetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Heritage or Peoples of

any of their rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

21. "Responsible Person." By taking any actions pursuant to this Order, Heritage or Peoples shall not: (a) be deemed to be in control of the operations or liquidation of Debtor; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor.

22. Binding Effect. Except as provided in Paragraph 8 herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; or (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order.

23. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

24. Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting the Case to a case under chapter 7 of the Code, (c) dismissing the Case, (d) withdrawing of the reference of the Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court.

###

# EXHIBIT A
# DEFINED TERMS

1. ***Aggregate Collateral***. Collectively, the Prepetition Collateral and the Postpetition Collateral.

2. ***Allowable 506(b) Amounts***. To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in the Prepetition Documents, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Heritage or Peoples in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Heritage or Peoples in the Case, including in defending any Challenge.

3. ***Budget.*** The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Heritage and Peoples.

4. ***Carve Out*** means: (i) Quarterly fees, and interest thereon, of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, and any fees due to the Clerk of the Court; (ii) those expenses, payments, or disbursements that are expressly permitted under the Budget or Order; (iii) the amounts due to Heritage or Peoples and their attorneys or other professionals hereunder or under the Loan Documents; provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause and shall not affect the right of either lender to object to the allowance and payment of such amounts; (iv) as may be agreeable to Peoples and Heritage, a reasonable carve out for a committee if one is formed; and (v) any cost and fees of a Chapter 7 trustee, if appointed, however, not to exceed the amount of $5,000 and only as approved by the Court.

5. ***Case***. The chapter 11 case.

6. ***Cash Collateral***. All "cash collateral," as that term is defined in Code§ 363(a), and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of any inventory and the collection of any accounts receivable, without any set off for any reason including but not limited to payment of other debts; expenses of the business; payment for utilities or employees; or any other payment

10

whatsoever except for charges imposed by credit card company(ies) during the transaction from the consumer to Debtor and taken prior to payment to Debtor.

7. *Challenge*. A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens, or any other claims or causes of action against Heritage or Peoples, which Debtor, the Committee, or another party-in-interest may bring, in accordance with this Order.

8. *Challenge Party*. The Committee, any Trustee, or other party-in-interest with the requisite standing (provided that such party has received appropriate notice of the Motion).

9. *Code*. The United States Bankruptcy Code (11 U.S.C. § 101 et seq.), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

10. *Committee*. Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

11. *Court*. The United States Bankruptcy Court for the Northern District of New York.

12. *Cumulative Basis*. For purposes of measuring the cumulative amount of the Permitted Variance, (a) during the first week after the Filing Date, cumulatively for such one-week period, (b) during the first two weeks after the Filing Date, cumulatively for such two week period, (c) during the first three weeks after the Filing Date, cumulatively for such three week period, and (d) from and after the first four weeks after the Filing Date, cumulatively for the most recent four-week period.

13. *DIP Accounts*. The accounts identified as (1) Debtor's debtor in possession operating account and (2) Debtor's debtor in possession tax account, each held by Peoples.

14. *Excess Cash Collateral*. All amounts of Cash Collateral which exceed the amounts of payments listed in the Budget.

15. *Event of Default*. Any default under this Order; the Heritage Line of Credit, or the Peoples Line of Credit. Any delay or omission by Heritage or Peoples in bringing such default to the attention of the Court or the Debtor or the other parties to this case shall not constitute waiver.

16. *Filing Date*. September 19, 2017.

17. *Final Hearing*. The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

18. *Final Order*. A final order authorizing Debtor to use Cash Collateral and incur Postpetition Debt and which indicates that it replaces or supersedes this Cash Collateral Order.

19. *Heritage Line of Credit*.  The Commercial Loan Agreement (revolving Draw Loan) dated as of January 15, 2015, by and among Debtor and Heritage, as amended, modified and supplemented from time to time.

20. *Heritage Debt*. All indebtedness, obligations and liabilities of every nature under the Heritage Line of Credit as of the Filing Date and all fees, costs, interest, and expenses as and when due and payable pursuant to the Heritage Line of Credit.

21. *Heritage Truck Loan*.  The Commercial Loan and Security Agreement (Single Advance) dated as of October 12, 2012, by and among Debtor and Heritage, as amended, modified and supplemented from time to time.

22. *Investigation Period*. The period from the Filing Date until the date that is the earlier of (1) seventy-five (75) days after the Filing Date, (2) sixty (60) days after the date that a Committee is formed and (3) the date scheduled for the auction of substantially all of the Aggregate Collateral.

23. *Lender*.  Peoples and/or Heritage, as the context indicates.

24. *NY CREM Debt*.  All indebtedness, obligations and liabilities of every nature under the NY CREM Loan as of the Filing Date and all fees, costs, interest, and expenses as and when due and payable pursuant to the NY CREM Loan.

25. *NY CREM Loan*.  The commercial loan, including a Promissory Note and Business Loan Agreement all dated on or about October 23, 2015 and secured by a mortgage on lands and premises around 9140 Route 22, Granville, New York, by and among Debtor and Peoples, as amended, modified and supplemented from time to time.

26. *Peoples Line of Credit*.  The Promissory Note and Business Line of Credit dated on or about September 25, 2015, secured by a first security interest in all of the assets of the Borrower, by and among Debtor and Peoples, as amended, modified and supplemented from time to time.

27. ***Peoples Loans***:  collectively, the Peoples Line of Credit, the NY CREM Loan, and the VT CREM Loan.

28. ***Peoples LOC Debt***. All indebtedness, obligations and liabilities of every nature under the Peoples Line of Credit as of the Filing Date and all fees, costs, interest, and expenses as and when due and payable pursuant to the Peoples Line of Credit.

29. ***Permitted Variance***. Budget deviations (a) with respect to the amount set forth in any weekly Budget period for "Payroll" and "Payroll Taxes" up to 5% measured on a Cumulative Basis, (b) with respect to the amount set forth in the Budget as "Other", up to 10% measured on a Cumulative Basis, and (c) with respect to each other cash uses up to the sum of (i) 10% of each such items measured on a Cumulative Basis plus (ii) any reduction in the Budget for the permitted amounts payable in respect of "Utility Deposits" and "Critical Vendor Payments".

30. ***Postpetition Collateral***. All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (excluding claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Heritage Line of Credit or the Peoples Line of Credit), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

31. ***Postpetition Debt***. All indebtedness or obligations of Debtor incurred on or after the Filing Date pursuant to this Order or otherwise.

32. ***Prepetition Collateral***. All of the "Collateral" which is covered or described by the Peoples Line of Credit and/or the Heritage Line of Credit, or which reasonably can be considered to be described or included in either or both, existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

33. ***Prepetition Debt***. Collectively, the Heritage Debt, the Peoples LOC Debt, the NY CREM Debt and the VT CREM Debt

34. ***Prepetition Documents***. The documents which form any of the Heritage Line of Credit or the Peoples Loans.

13

35. ***Prepetition Third Party Documents***. Collectively, Debtor's deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Heritage or Peoples has an interest.

36. ***Trustee***. Any trustee appointed or elected in the Case.

37. ***VT CREM Debt***.  All indebtedness, obligations and liabilities of every nature under the VT CREM Loan as of the Filing Date and all fees, costs, interest, and expenses as and when due and payable pursuant to the NY CREM Loan.

38. ***VT CREM Loan***.  The commercial loan, including a Promissory Note and Business Loan Agreement all dated on or about October 23, 2015 and secured by a mortgage on lands and premises around 239 West Main Street, Bennington, Vermont, by and among Debtor, West Shore Management, LLC, and Peoples, as amended, modified and supplemented from time to time.

*End of definitions*

0233-590/#772302

| | LaFlamme's Inc. | | | | | |
|---|---|---|---|---|---|---|
| | Cash Flow Forecast - 2017 | Forecast | Forecast | Forecast | Forecast | Forecast |
| | | 10/9/2017 | 10/16/2017 | 10/23/2017 | 10/30/2017 | 11/6/2017 |
| | **Cash Sources** | | | | | |
| | From sales of inventory | 36744 | 36744 | 36744 | 36744 | 36744 |
| | A/R Collection | | | | | |
| | Misc. Sources, inc. insurance, etc. | 4925 | | | | 4925 |
| | **Total Cash Sources** | 41669 | 36744 | 36744 | 36744 | 41669 |
| | Payments/Expenses | | | | | |
| Priority | **Cash Uses** | 10/9/2017 | 10/16/2017 | 10/23/2017 | 10/30/2017 | 11/6/2017 |
| 1 | Payroll & employee reimbursement for any employee other than Chris or Andrea Laflamme | 3600.00 | 3600.00 | 3600.00 | 2400.00 | 2400.00 |
| 2 | Taxes - Sales and Use | 2388.00 | 2389.00 | 2390.00 | 2391.00 | 2392.00 |
| 3 | Taxes - Payroll, unemployment, and Worker's Compensation | 2267.00 | 2267.00 | 2267.00 | 1386.00 | 1386.00 |
| 4 | Taxes - Property, Business, etc. | 465.00 | 465.00 | 465.00 | 465.00 | 465.00 |
| 5 | US Trustee fees, "up to" amount; held until fees due | 650.00 | 0.00 | 0.00 | 0.00 | 650.00 |
| 6 | People's LOC Debt | 2295.23 | 0.00 | 0.00 | 0.00 | 2295.23 |
| 7 | Heritage Debt | 2295.23 | 0.00 | 0.00 | 0.00 | 2295.23 |
| 8 | NY CREM Debt | 1394.56 | 0.00 | 0.00 | 0.00 | 1394.56 |
| 9 | VT CREM Debt (Lease Payment through West Shore) | 3542.66 | 0.00 | 0.00 | 0.00 | 3542.66 |
| 10 | Heritage Truck Loan | 438.45 | 0.00 | 0.00 | 0.00 | 438.45 |
| 11 | Insurance - personal property (inventory) and Commercial General Liability | 577.00 | 577.00 | 577.00 | 577.00 | 577.00 |
| 12 | Sunset ( * limited to the wholesale value of actual Sunset inventory sold) | * | * | * | * | * |
| 13 | Equipment rental | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| 14 | Repairs/Maintenance | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| 15 | Legal/accounting/other professional | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 16 | Vehicle expenses | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| 17 | Postpetition Debt (all numbers are "no more than") | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 18 | Inventory (Merchandise) | 21550.00 | 21700.00 | 22200.00 | 22200.00 | 21550.00 |
| 19 | Utilities | 0.00 | 0.00 | 0.00 | 0.00 | 2300.00 |
| 20 | Lease Payment (Rutland Location) | 0.00 | 0.00 | 0.00 | 0.00 | 1000.00 |
| 21 | Health Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 2000.00 |
| 22 | Payroll & employee reimbursement for Chris LaFlamme and Andrea LaFlamme | 2022.00 | 2022.00 | 2022.00 | 2022.00 | 2022.00 |
| | Total Cash Uses | 44485.13 | 34020.00 | 34521.00 | 32441.00 | 47708.13 |
| | **Net Cash Flow** | -2816.13 | 2724 | 2223 | 4303 | -6039.13 |

# Exhibit B

SCHEDULE C
to the Cash Collateral Order

| Lienholder's name | Lienholder's Address | Amount of Lien at time of filing | Specific property on which the lien applies |
|---|---|---|---|
| Sunset Trading | | $39,000 | Specific pieces of Sunset Trading furniture. |
| None others | | | |

# Exhibit C

###